ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **OFICINA DE ÉTICA GUBERNAMENTAL** QUERELLANTE(S)-RECURRIDA(S) <br><br> V. <br><br> **HÉCTOR R. VÁZQUEZ RIVERA** QUERELLADA(S)-RECURRENTE(S) | **KLRA202200450** | *REVISIÓN DE DECISIÓN ADMINISTRATIVA* procedente de la **OFICINA DE ÉTICA GUBERNAMENTAL** <br><br> Civil Núm.: **21-21** <br><br> Sobre: Violación a los incisos (b) y (s) del Artículo 4.2 de la Ley Orgánica de Ética Gubernamental de Puerto Rico; Ley 1-2012, según enmendada |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez

*Barresi Ramos,* juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 16 de octubre de 2024.

Comparece ante este Tribunal de Apelaciones, el señor **HÉCTOR R. VÁZQUEZ RIVERA** (señor **VÁZQUEZ RIVERA**) mediante *Recurso de Revisión Judicial* entablado el 17 de agosto de 2022. En su escrito, nos solicita que revisemos la *Resolución Sumaria* decretada el 15 de junio de 2022 por la **OFICINA DE ÉTICA GUBERNAMENTAL (OEG)**.[1] Mediante este dictamen administrativo, se prescribió que:

> "inequívocamente se configuró una violación al inciso (b) del [A]rtículo 4.2 de la LOOEG [*Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*]. Concluir lo contrario sería avalar que, en situaciones de emergencia, reine el amiguismo y el favoritismo en perjuicio del servicio público y en detrimento de las necesidades de [la] ciudadanía en general.".[2]

En consecuencia, se le impuso al señor **VÁZQUEZ RIVERA** una multa administrativa de $5,000.00 por la infracción al inciso (b); y $2,000.00 por la infracción al inciso (s) ambos del Artículo 4.2 de la *Ley Orgánica de la* **OEG**.

---

[1] Esta determinación administrativa fue notificada y archivada en autos el 15 de junio de 2022. Apéndice del *Recurso de Revisión Judicial,* págs. 449- 454.
[2] *Íd.*, pág. 453.

Número Identificador: SEN2024_____

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El señor **Vázquez Rivera** fungió como miembro voluntario de la Guardia Estatal (GE) por más de quince (15) años y ostentaba el rango de comandante.

El 22 de septiembre de 2017, fue activado por la emergencia del huracán María. Ello mediante la *Orden Ejecutiva 2017-047* (OE-2017-047).[3] En conformidad con esta, la misión de la Guardia Estatal era dar apoyo y trabajar en conjunto con la Guardia Nacional de Puerto Rico (GNPR). Su activación se extendió más allá del 15 de diciembre de 2017.[4] Desde antes de su activación, el señor **Vázquez Rivera** tenía un contrato de servicios profesionales con el US Customs and Border Protection Agency (CBP) mediante el cual prestaba servicios como investigador.[5]

El día 11 de diciembre de 2020, la **OEG** incoó una *Querella* en la cual alegó que el señor **Vázquez Rivera** incurrió en violaciones al Artículo 4.2 incisos (b) y (s) de la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico* (LOOEG), conocida como la Ley Núm. 1- 2012, según enmendada.[6] Arguyó que el señor **Vázquez Rivera** fue llamado al servicio militar activo estatal conforme a la *Orden Ejecutiva*, y por esto se convirtió en un *servidor público* conforme a la definición del Artículo 1.2 (gg) de la LOOEG, *supra*. Argumentó que, el 3 de octubre de 2017, el señor **Vázquez Rivera** instruyó a personal de la Guardia Estatal que laboraba en el *Regional Station Area* (RSA), ubicado en la antigua Base Ramey en Aguadilla, Puerto Rico, a trasladar un generador eléctrico marca Champion a las facilidades de RSA de la Guardia Estatal en el pueblo de Canóvanas, Puerto Rico. Indicó que el señor **Vázquez Rivera** cumplimentó el formulario 213 *Incident Command System*. Expuso que mientras estaba dicho generador en el RSA de Canóvanas, el señor **Vázquez Rivera** ordenó su traslado a la residencia de la señora Emma Negrón Negrón (señora Negrón Negrón) en la Urbanización El Conquistador en Trujillo Alto, Puerto Rico. Enunció que, posteriormente, el

---

[3] Apéndice del *Recurso de Revisión Judicial,* págs. 150- 153.
[4] *Íd.,* pág. 459.
[5] 3 LPRA § 1854 *et seq.* Apéndice del *Recurso de Revisión Judicial,* pág.42.
[6] *Íd.,* págs. 1- 5.

generador fue devuelto a las facilidades del RSA en Aguadilla, Puerto Rico, y eventualmente a las oficinas de CBP. Además, esgrimió que se le imputaba al señor **VÁZQUEZ RIVERA** utilizar su puesto para beneficiar a la señora Negrón Negrón. Discutió que en particular usó sus deberes y facultades del cargo para obtener directamente un beneficio no permitido por ley para una persona privada en violación al Artículo 4.2 incisos (b) y (s) de la LOOEG. Razonó que el señor **VÁZQUEZ RIVERA** puso en duda la integridad de la función gubernamental de la Guardia Estatal.

El 14 de enero de 2021, el señor **VÁZQUEZ RIVERA** presentó su *Contestación a la Querella*.[7] Replicó que el generador no era propiedad del Gobierno de Puerto Rico sino de una agencia federal; el CBP le prestó el generador en su carácter de investigador y no como miembro de la GE. Manifestó, además, que no le correspondía completar el formulario 213.

Una vez culminó el descubrimiento de prueba, el 29 de junio de 2021, el señor **VÁZQUEZ RIVERA** presentó una *Moción en Solicitud de Resolución Sumaria* fundamentada en que la **OEG** carecía de jurisdicción sobre el asunto y su persona.[8] También, exteriorizó que no se configuraron los elementos esenciales de las acciones instadas en su contra.

De otra parte, el 19 de julio de 2021, la **OEG** presentó su *Oposición a Resolución Sumaria a Favor del Querellado y Solicitud de Resolución Sumaria a Favor de la Parte Querellante*.[9] Respondió que tomó en consideración las Cartas Circulares del Departamento de Hacienda 1300-31-92 y 1300-8-93 así como la Carta Normativa 1-86 de la Oficina Central de Administración de Personal para determinar si los servicios prestados constituyen un puesto; entre los factores a sopesar, se encontraban:

> 1) Trabajar una jornada regular de trabajo de 37.5 o 40 horas laborables semanalmente;
> 2) Continuidad de la prestación de los servicios;
> 3) Las funciones que realiza la persona deben encontrarse en un plan de clasificación de puestos;
> 4) La paga está establecida en un plan de retribución y debe corresponder a un salario mensual y a una jornada regular de trabajo;

---

[7] Apéndice del *Recurso de Revisión Judicial*, págs. 6- 10.
[8] *Íd.*, págs. 23- 56.
[9] *Íd.*, págs. 57- 434.

5) Los servicios se den por terminados por justa causa; y
6) Los contratados son acreedores de beneficios marginales.[10]

Ponderó que para determinar cuándo se trataba de una mera relación contractual se debían considerar las siguientes condiciones y características:

1) El término de la prestación de los servicios de carácter determinado según consta en el contrato;
2) El tipo de servicio es uno de carácter altamente profesional, técnico y especializado, en forma de consultoría, el cual no está contenido en el plan de clasificación aplicable;
3) Los servicios están especificados en el contrato y los individuos contratados hacen uso de su discreción en cuanto al modo y condiciones relevantes a la realización de la encomienda asignada, por lo que no poseen directrices detalladas y específicas en cuanto al modo de realizar el trabajo y sus objetivos;
4) La persona que presta servicios por contrato generalmente lo hace desde su oficina privada y utiliza para ello su material, esfuerzo y empleados, en general las agencias de Gobierno no proveen a la persona contratada oficina, materiales o equipo;
5) Los servicios son de naturaleza esporádica e incidental, para una tarea precisa y determinada de carácter especial. La parte contratada no es acreedora de los beneficios marginales aplicables a los empleados que ocupan puestos regulares;
6) Las personas contratadas no están sujetas a una jornada regular de trabajo, los servicios se prestan en un horario flexible en un mínimo de horas que no debe ser igual a la jornada regular de trabajo establecida por los empleados que ocupan puestos.
7) Los servicios están ajenos a la organización en cuanto a su participación dentro del esquema de autoridad.[11]

Al analizar estas guías, la **OEG** concluyó que el único hecho de que no se le descontaran al contratista de su salario, la aportación del retiro y otras contribuciones no implicaba que un contrato de servicios no constituía un puesto. Aclaró que habría que considerar varios criterios y que ninguno por sí solo era determinante. Finalizó que, en esta controversia, la agencia si tenía jurisdicción sobre las personas activadas de la GE, y se configuraron todos los elementos de las violaciones imputadas.

El 6 de agosto de 2021, el señor **VÁZQUEZ RIVERA** presentó una *Réplica a Oposición a Resolución Sumaria a Favor del Querellado y Oposición a Solicitud de Resolución Sumaria a Favor de la Parte Querellante.*[12] El 20 de agosto de 2021, la **OEG** presentó *Dúplica a Réplica a Oposición a Resolución Sumaria a Favor del*

---

[10] Apéndice del *Recurso de Revisión Judicial*, pág. 70.
[11] *Íd.*, pág. 71.
[12] Apéndice del *Recurso de Revisión Judicial*, págs. 435- 441.

*Querellado y Oposición a Solicitud de Resolución Sumaria a Favor de la Parte Querellante.*[13]

Más tarde, el 6 de junio de 2022, el Oficial Examinador rindió su *Informe del Oficial Examinador* (*Informe*) conteniendo determinaciones de hechos y conclusiones de derecho.[14] En el *Informe*, se formuló un total de cincuenta (50) determinaciones de hecho, entre éstas:

> 1) El querellado comenzó como miembro voluntario de la GE el 20 de julio de 2002.
> 2) El 19 de agosto de 2014, el querellado fue promovido al rango de comandante como oficial administrativo en el escuadrón de logística.
> 3) El señor Vázquez Rivera fue movilizado al Servicio Militar Activo Estatal en virtud de la Orden Ejecutiva 2017-047, firmada el 17 de septiembre de 2017 por el entonces Gobernador de Puerto Rico, Ricardo Rosselló Nevares. Dicha Orden Ejecutiva declaró un estado de emergencia a consecuencia del inminente paso del huracán María y activó a la GNPR para proveer apoyo durante la misma.
> 4) La activación del querellado comenzó el 22 de septiembre de 2017 y se extendió más allá del 15 de diciembre de 2017, con carácter de remuneración económica durante todo el periodo en que estuvo activo.
> [...]
> 12) Cuando el señor Vázquez Rivera fue activado al Servicio Militar Activo Estatal tenía que firmar un documento, indicando su asistencia, para ser firmado por un superior.
> 13) El querellado **tenía flexibilidad de brindar sus servicios de manera presencial, remota, por teléfono o correo electrónico, cuando así fuere necesario, al igual que otros miembros de la GE activados al Servicio Militar Activo Estatal**.
> 14) Aunque su activación fue con carácter de remuneración económica, **el señor Vázquez Rivera no fue acreedor de licencias de vacaciones o enfermedad ni recibió bonos, al igual que el resto de los miembros de la GE activados al Servicio Militar Activo Estatal**.
> 15) La activación del querellado al Servicio Militar Activo Estatal, en virtud de la Orden Ejecutiva 2017-047, **fue temporera**, durante el periodo de activación al igual que los otros miembros de la GE activados.
> 16) Como miembro activo de la GE, el señor Vázquez Rivera **no tenía un horario fijo. Algunos días trabajaba menos horas que otros con relación a sus funciones como miembro activo, dependiendo de las necesidades que surgían durante la emergencia, al igual que los otros miembros de la GE activados al Servicio Militar Activo Estatal**.
> 17) Por concepto de los **servicios que el querellado prestó mientras permaneció activo** en el Servicio Militar Activo Estatal en virtud de la Orden Ejecutiva 2017-047, **la GNPR entregó al querellado un Formulario 480.6B del Departamento de Hacienda de Puerto Rico, bajo el cual se le hizo la retención del siete por ciento (7%) que corresponde a un contratista independiente para efectos contributivos**. (Énfasis nuestro).
> [...]

Así, el Oficial Examinador recomendó encontrar incurso de violación a los incisos (b) y (s) del Artículo 4.2 de la LOOEG e imponer una multa al señor

---

[13] *Íd.*, págs. 442- 447.
[14] *Íd.*, págs. 455- 475.

**VÁZQUEZ RIVERA**. Ante ello, el 15 de junio de 2022, la **OEG** pronunció la *Resolución Sumaria* impugnada adoptando el *Informe* y haciéndolo forma parte integral; declarando *No Ha Lugar* la resolución sumaria presentada por el señor **VÁZQUEZ RIVERA**; y *Ha Lugar* la resolución sumaria presentada por la **OEG**.[15] El 5 de julio de 2022, el señor **VÁZQUEZ RIVERA** presentó su *Moción de Reconsideración de Resolución Sumaria Emitida por la Dirección Ejecutiva*.[16] El 20 de julio el 2022, la **OEG** denegó dicho petitorio y expresó que "los planteamientos allí esbozados no nos convencen de cambiar nuestra determinación de la *Resolución Sumaria*".[17]

Inconforme, el 17 de agosto de 2022, el señor **VÁZQUEZ RIVERA** interpuso un *Recurso de Revisión Judicial* ante este Tribunal de Apelaciones. En su recurso, señala el(los) siguiente(s) error(es):

> Erró el Foro Administrativo al determinar que el Sr. Vázquez Rivera, como miembro activo de la Guardia Estatal, era un servidor público de la Rama Ejecutiva sujeto a la Ley Orgánica de la OEG y que, consecuentemente, la OEG tiene jurisdicción sobre la materia que nos ocupa.

> Erró el Foro Administrativo al determinar que se configuraron los elementos de las violaciones imputadas al Sr. Vázquez Rivera en la Querella bajo los Artículos 4.2 (b) y (s) de la Ley Orgánica de la OEG.

El 23 de agosto de 2022, intimamos *Resolución* en la cual, entre otras cosas, concedimos un plazo de treinta (30) días para presentar alegato(s) en oposición al recurso. El 4 de octubre de 2022, la **OEG** presentó su *Alegato en Oposición de la Parte Recurrida*. Planteó que el señor **VÁZQUEZ RIVERA** por haber sido activado en el servicio militar estatal a causa de la OE- 2017-047 era un *servidor público* sujeto a la jurisdicción de la **OEG**.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a las (s) controversia(s) planteada(s).

### - II -

### - A - *Revisión Administrativa*

---

[15] Apéndice del *Recurso de Revisión Judicial*, págs. 450- 454.
[16] *Íd.*, págs. 476- 490.
[17] *Íd.*, págs. 491- 494.

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[18] Su sección 4.1 instituye la *revisión judicial* de las determinaciones finales de las agencias por este Tribunal de Apelaciones.[19]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[20] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la *razonabilidad* de la actuación de la agencia.[21] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[22]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[23] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[24] Ello implica que los dictámenes de los entes administrativos merecen deferencia judicial.[25]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[26] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación

---

[18] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).
[19] 3 LPRA § 9671.
[20] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004).
[21] *Otero v. Toyota*, 163 DPR 716 (2005).
[22] *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).
[23] *Torres Rivera v. Policía de PR,* 196 DPR 606, 625- 626 (2016)*; García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).
[24] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).
[25] *DACo v. Toys "R" Us*, 191 DPR 760, 765 (2014).
[26] *Torres Rivera v. Policía de PR, supra.*

administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[27]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[28] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[29] Debido a la presunción de legalidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[30] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[31] De modo que no podrá basarse únicamente en simple alegaciones. A esto se le conoce como la norma de la *evidencia sustancial*, con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[32] Aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[33]

---

[27] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud*, 210 DPR 79 (2022).
[28] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).
[29] *Otero v. Toyota, supra*, pág. 728.
[30] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).
[31] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[32] *Pacheco v. Estancias*, 160 DPR 409, 432 (2003).
[33] *Íd.*

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[34] Así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello que, ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[35]

En resumen, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[36] Por el contrario, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[37] Del mismo modo, el Prof. Echevarría Vargas ha puntualizado que las decisiones de las agencias gubernamentales no deben ser "revocadas o modificadas salvo que conste una actuación arbitraria, ilegal o irrazonable".[38]

### - B - *Ley Orgánica de la Oficina de Ética Gubernamental*

En nuestro ordenamiento jurídico sabido es que la *jurisdicción* de las agencias administrativas está circunscrita a su ley habilitadora.[39] De esta forma, al promulgar la ley orgánica de una agencia, la Asamblea Legislativa "autoriza y delega a esta los poderes necesarios para que actúe de acuerdo con el propósito que persiguió el legislador con su creación".[40] Así, para instituir el alcance de la autoridad delegada a una agencia administrativa al atender algún asunto, es necesario considerar la letra del estatuto que la creó.[41]

La *Ley Orgánica de la Oficina de Ética Gubernamental* (LOOEG) es el estatuto que rige la conducta de los *servidores* y *exservidores públicos* de la Rama Ejecutiva.[42] La referida Ley, entre otras cosas, está dirigida a implantar un servicio

---

[34] *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).
[35] *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002 (2011).
[36] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 893.
[37] *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo*, *supra*.
[38] Echevarría Vargas, J. A., *Derecho Administrativo Puertorriqueño*, 5ta. ed. Rev., San Juan, Ed. Situm, 2023, pág. 340.
[39] *Colón Rivera, et al. v. ELA*, 189 DPR 1033, 1050 (2013).
[40] *Id.*
[41] *González y otros v. Adm. de Corrección*, 175 DPR 598, 607 (2009).
[42] *OEG v. Martínez Giraud*, *supra*.

público íntegro, con valores, capaz de mantener la confianza en sus instituciones, así como la transparencia en las funciones oficiales.[43] A su vez, su misión es educar al *servidor público* para que en el desempeño de sus funciones impulse valores como: bondad, confiabilidad, justicia, responsabilidad, respeto y civismo que deben servir de guía en la administración pública.[44] Como parte de las facultades conferidas a la **OEG**, se incluye el mecanismo para fiscalizar la conducta de los *servidores públicos*, así como la penalización de aquellos que hayan vulnerado las normas éticas que delimitan la función pública.[45] En consecuencia, dicha ordenanza permite que la **OEG** imponga sanciones civiles y penales a los infractores de sus disposiciones.[46] Es decir, cuando la **OEG** tiene ante sí un asunto que no involucra a un *servidor* o *exservidor público*, dicha entidad carece de *jurisdicción* para atender la controversia ante su consideración. Asimismo, en el inciso (e) del Artículo 2.3, se faculta tanto a la **OEG** como a su director ejecutivo a "emitir opiniones sobre las disposiciones de [esta ley]".[47]

Particularmente, la LOOEG define a un "*servidor público*" como aquella:

"[p]ersona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También, incluye **al contratista independiente cuyo contrato equivale a un puesto o cargo**, o que entre sus responsabilidades está la de intervenir directamente en la formulación e implantación de la política pública. (Énfasis Nuestro)[48]

En varias ocasiones, nuestro Tribunal Supremo ha definido el término "*funcionario público*" y ha decidido en distintas circunstancias quién es funcionario y quién no lo es. Particularmente, ha determinado que el "*funcionario público*" es aquel investido de parte de los poderes del Estado y no de un individuo, cuyos deberes son puramente ministeriales o secretariales.[49] Normalmente, el cargo de un funcionario es creado por ley y goza de cierta permanencia, con deberes impuestos a su incumbente que envuelven algún ejercicio del poder soberano y en

---

[43] *Íd.*
[44] 3 LPRA § 1855.
[45] *Íd.*
[46] 3 LPRA § 1857 (f).
[47] 3 LPRA § 1855(b).
[48] Art. 1.2 (gg), 3 LPRA § 1854 (gg).
[49] *De la Vega v. Sancho Bonet, Tes.*, 56 DPR 753, 755 (1940).

cuyo desempeño está envuelto el interés público.[50] Diversas definiciones del referido término se destacan como factores esenciales de la función pública, los de nombramiento y duración del cargo, compensación, poderes y deberes.[51]

Pertinente a la controversia de este caso, el Artículo 4.2, inciso (b), lee: "[u]n servidor público no puede utilizar los deberes y las facultades de su cargo ni la propiedad o los fondos públicos para obtener, directa o indirectamente, para él o para una persona privada o negocio, cualquier beneficio que no esté permitido por ley". Su inciso (s) concreta: "[u]n servidor público no puede llevar a cabo una acción que ponga en duda la imparcialidad e integridad de la función gubernamental".

De otra parte, el *Reglamento de Asunto Programático de la Oficina de Ética Gubernamental* (*Reglamento*) se adoptó en virtud de la LOOEG, *supra*, con el fin de cumplir sus propósitos.[52] En lo particular, el Capítulo VI detalla el proceso de adjudicación que se celebra ante la **OEG**. En lo concerniente, el Artículo 6.5 (b) del antedicho *Reglamento* concreta el contenido que debe tener una querella. Específicamente, este documento debe contener, entre otras cosas, una "[a]severación que establezca la **jurisdicción** de la **OEG** y **una [d]isposición legal o reglamentaria por la cual se imputa cada violación**" (Énfasis Nuestro).[53]

*- C - Código Militar de Puerto Rico*

El *Código Militar de Puerto Rico* intima que el Gobernador de Puerto Rico, en su carácter como Comandante en Jefe, tiene la autoridad para activar a la Guardia Nacional para atender situaciones de seguridad pública.[54] Particularmente, la Sección 228 de la Ley Núm. 62-1969, concierta que los oficiales y alistados en el Servicio Militar Activo "tendrán el carácter de funcionarios del

---

[50] *Brunet Justiniano v. Gobernador*, 130 DPR 248, nota al calce núm. 5 (1992).
[51] Opinión del Secretario de Justicia Núm. 1973-3, de 9 de febrero de 1973.
[52] Reglamento Núm. 8231 (Reglamento 8231). Este documento define al *"servidor público"* como: "[P]ersona en el Gobierno que puede o no intervenir en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye al contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades está la de intervenir directamente en la formulación e implantación de la política pública. *Íd.*, págs. 70- 71.
[53] Reglamento 8231 de la *Oficina de Ética Gubernamental*, pág. 75. Cabe señalar que este documento adoptó la definición de *"servidor público"* de la citada LOOEG, *supra*.
[54] Conocida como la Ley Núm. 62 de 23 de junio de 1969, según enmendada. 25 LPRA § 2001 *et seq*. Véase los Arts. 207 y 226 de la Ley Núm. 62, 25 LPRA § 2058 y 2077. *Véase*, además, *Orden Ejecutiva del Gobernador de Puerto Rico*, Hon. Ricardo Rosselló Nevares, Declarando Estado de Emergencia a Consecuencia del Inminente Paso del Huracán María y Activando la Guardia Nacional para que Provea Apoyo Durante esta Emergencia, OE-2017-047.

orden público, con todos los poderes y obligaciones inherentes a tal carácter **cuando el Gobernador así expresamente lo ordene o autorice**" (Énfasis nuestro).[55] En vista de esta facultad que tiene el Gobernador de Puerto Rico, como Comandante en Jefe, para activar a la Guardia Nacional en situaciones catastróficas como el paso de un huracán, el exgobernador Ricardo Rosselló Nevares emitió la *Orden Ejecutiva*-2017-047. La Sección Octava de la precitada *Orden* activó a los oficiales y alistados del Servicio Militar Activo "en cumplimiento con esta Orden Ejecutiva al carácter de funcionario del orden público con todos los poderes y obligaciones inherentes a tal carácter".[56]

- III –

En su primer señalamiento, el señor **Vázquez Rivera** apuntó que incidió el foro primario al determinar que, como miembro activo de la Guardia Estatal, era un *servidor público* de la Rama Ejecutiva sujeto a la LOOEG, *supra*, y que, consecuentemente, la **OEG** tiene jurisdicción sobre la materia que nos ocupa. En el segundo señalamiento, apuntó que erró al determinar que se configuraron los elementos de las violaciones imputadas en la *Querella* bajo el Artículo 4.2 incisos (b) y (s) de la LOOEG.

Por otra parte, la **OEG** alegó que al activarse al señor **Vázquez Rivera** en el servicio militar estatal en virtud de la *Orden Ejecutiva*-2017-047 este era un *servidor público* sujeto a su jurisdicción.

Ante ello, nos corresponde determinar primero si en efecto el señor **Vázquez Rivera** era un *servidor público* de conformidad con la definición de la LOOEG, *supra,* al momento de ser activado como miembro de la Guardia Estatal y de esta manera, discernir si la **OEG** tenía jurisdicción para atender las controversias de la *Querella* en cuestión. Veamos.

El señor **Vázquez Rivera** contendió que, según las disposiciones de la LOOEG, *supra*, es un requisito esencial que la conducta que infringe dicha legislación debe ser llevada a cabo por un *servidor* o *exservidor público*. Afirmó que para poder determinar si una persona es o no servidor público, es necesario tomar

---

[55] 25 LPRA § 2079.
[56] Orden Ejecutiva 2017-047, pág. 3.

en consideración si los servicios prestados crearon una relación contractual o si estos son propios de los de un funcionario de la Rama Ejecutiva. A su vez, apuntaló que el foro administrativo solo consideró un factor: si la designación de comandante forma parte de un plan de clasificación de puestos o no; y no sopesó la totalidad de los factores que dicha agencia tiene que examinar para determinar el alcance de la definición de *"servidor público"* en conformidad con su ley habilitadora. Además, puntualizó que la **OEG** concluyó incorrectamente que, al ser llamado como funcionario de orden público automáticamente, se convertía en un *servidor público* bajo la LOOEG, *supra*. A su vez, dedujo que la evidencia contenida en el récord administrativo fundamentó que los servicios que prestó durante su activación al Servicio Militar Estatal son propios de una relación contractual y estos no equivalen a aquellos que presta un *servidor público* que ocupa un puesto en la Rama Ejecutiva.

En su oposición, la **OEG** dilucidó que el *Código Militar*, Ley Núm. 62-1969, *supra*, dispone que el Servicio Militar Activo Estatal es un servicio a tiempo completo. Dedujo que la referida Ley dispone que los soldados activados tendrán el carácter de funcionarios del orden público y de esta manera se convirtieron en *servidores públicos* al amparo de la LOOEG, *supra*.

Según pormenorizamos y por la particularidad de los hechos de este caso, concluimos que convergen varias circunstancias y criterios para determinar si la activación del señor **Vázquez Rivera** para prestar sus oficios al Servicio Militar Activo Estatal, durante la emergencia por el paso del Huracán María, constituyó o no un cargo o puesto regular, conforme a la definición de *"servidor público"* de la LOOEG, *supra*. Entre estos factores que quedaron demostrados en el expediente administrativo se encuentran: 1) el señor **Vázquez Rivera** fue activado o contratado por un tiempo determinado, hasta que pasara la emergencia, según la OE-2017-047 lo cual implicaba que su servicio era esporádico o incidental;[57] 2) el señor **Vázquez Rivera** no estaba sujeto a una jornada regular de trabajo, pues este

---

[57] *Véase, Orden Ejecutiva* del Gobernador de Puerto Rico, Hon. Ricardo Rosselló Nevares, Declarando Estado de Emergencia a Consecuencia del Inminente Paso del Huracán María y Activando la Guardia Nacional para que Provea Apoyo Durante esta Emergencia, OE-2017-047. Apéndice del *Recurso de Revisión Judicial*, pág. 459. Determinaciones de hecho Núms. 3- 7.

no tenía un horario fijo;[58] 3) el señor **Vázquez Rivera** tenía flexibilidad de brindar sus servicios de manera remota; presencial; por teléfono o correo electrónico; por lo que estaba a su discreción la manera en que hacía las encomiendas asignadas;[59] 4) el señor **Vázquez Rivera** no era acreedor de licencias de vacaciones o enfermedad, ni recibió bonos ni ningún otro beneficio marginal aplicable a empleados que ocupan puestos regulares;[60] y 5) por concepto de su activación, el señor **Vázquez Rivera** recibió un Formulario 480.6B del Departamento de Hacienda de Puerto Rico, bajo el cual se le hizo la retención del siete por ciento (7%) que corresponde a un contratista independiente para efectos contributivos.[61] Empero, el señor **Vázquez Rivera** debía reportarse a un supervisor o superior para llevar a cabo sus tareas o labores como funcionario del orden público.

Por consiguiente, es forzoso colegir que el señor **Vázquez Rivera**, al ser activado para el Servicio Militar Activo Estatal en virtud de la *Orden Ejecutiva*, como funcionario del orden público automáticamente se convirtió en *servidor público* de la Rama Ejecutiva. Ello en conformidad a la definición de la LOOEG, *supra*, y, por lo tanto, la **OEG tenía** jurisdicción para atender los planteamientos en cuestión. Consecuentemente, discernimos que **OEG** no incidió.

Por otra parte, tras un concienzudo análisis de la totalidad del expediente, debemos discernir que contrario a las alegaciones del señor **Vázquez Rivera** sí se comprobaron las acciones constitutivas de infracción al Artículo 4.2, incisos (b) y (s). Así, **OEG** no cometió el segundo error.

Por ende, no hallamos indicador alguno que vislumbre que la **OEG** hubiese actuado de manera arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción. Contrario a ello, notamos que del expediente apelativo emana la existencia de suficientes elementos que nos llevan a concluir que la decisión administrativa está sustentada y/o avalada por *evidencia sustancial*.

No subsiste razón alguna, de hecho, o de derecho, que nos persuada a intervenir y variar la determinación recurrida. Además, del *Recurso de Revisión*

---

[58] Apéndice del *Recurso de Revisión Judicial*, pág. 460. Determinaciones de Hecho Núm. 16.
[59] *Íd*., Determinaciones de Hecho Núm. 13.
[60] *Íd*., Determinaciones de Hecho Núm. 14.
[61] Apéndice del *Recurso de Revisión Judicial*, pág. 460. Determinaciones de Hecho Núm. 17.

*Judicial* tampoco se desprende alguna otra prueba para rebatir la presunción de corrección que cobija el dictamen administrativo. Cónsono con lo anterior, somos del criterio de que la *Resolución Sumaria* dictaminada por la **OEG** fue una apropiada. Así pues, brindamos la deferencia al organismo administrativo por su *expertise*; y nos abstenemos de intervenir dado que su decisión es una racional. Así las cosas, es innecesaria la discusión del segundo señalamiento de error.

- **IV** -

Por los fundamentos expuestos, ***confirmamos*** la *Resolución Sumaria* emitida el 15 de junio de 2022 por la Oficina de Ética Gubernamental.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones